Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Bowie presiding along with Justice Moore and Justice Barberis. The first case this morning is number 519-0360, Midwest Sanitary Service et al. versus Sandberg-Phoenix et al. Arguing for the appellees, Midwest Sanitary Service et al. is George Ripplinger. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. How are you all? Good morning. Very well. Just for the record and so everybody knows, Justice Barberis is involved in the Workers' Compensation Division appeals process and they are currently holding court as well. So that is why he is not with us today. He will watch the videos, listen to the oral arguments, and then we will discuss the case between the three of us sometime in the very near future. That's just so you all know why Justice Barberis is not with us today. So is everyone ready to proceed? Yes, Your Honor. Then go right ahead. All righty. Well, good morning all. This is a different way of doing it and I will say candidly I would much prefer to be down there in front of you all so I can pace and do my thing, but we're going to do the best we can. We will say we have the nice pictures that make it look like we're there. Yes, I will confess I have smart people who have figured out how to do that. So we appreciate that. As Your Honors know, I represent the defendants in this legal malpractice case. The issue before the court today, in sum and substance, is whether a defense lawyer can be held liable for punitive damages paid by its client after a loss of a case in the face of the statute prohibiting the award of punitive damages against lawyers. Now, before jumping into that issue, I just want to give you a quick little rundown of how we arrived here. The origins of this case go back to 2013. A gentleman named Paul Crane worked for a small company, Midwest Sanitary Service, that hauled waste and hazardous waste. He had started out as a truck driver, had at some point became a supervisor of the container shop, where they deal with the containers used to haul the waste. But at some point in 2013, they had him become a truck driver again, and he became somewhat apparently disgruntled with that. He had previously made some complaints to management about things that were happening in the container shop. And then when he became disgruntled, he called the EPA about some of the things he thought were incorrectly being done. The EPA came out and approximately a month later, Midwest received a letter detailing what they thought were 14 violations of the environmental law. They received the letter, I think, around noontime on a day, and then they brought Mr. Crane in three hours later and then fired him. And then I think what rubbed salt in his wound at that time was a few days later, he received his last paycheck with a slogan that was in the paycheck that said, think before you speak, words can get you into more trouble than they can get you out of. So he hired a lawyer, filed a retaliatory discharge case. At trial, the Midwest position was that they didn't fire him because of this EPA issue. They fired him because he had been saying negative things about the company to a customer. So that was what the trial was about. The case went to trial. And the jury ultimately found Midwest had engaged in a retaliatory discharge, awarded one hundred and sixty thousand compensatory and six hundred and twenty five thousand dollars in punitive damages. That was subsequently affirmed by this court. And this legal malpractice action thereafter followed. The basic claims in the legal malpractice, there are several claims being made by Midwest. The primary one probably is the defend the Sandburg Phoenix's apparent failure to disclose some witnesses who were subsequently barred by Judge Ruth. Probably the most prominent witness was the customer who called to complain about Mr. Crane, who left a voicemail for, I think, one of the managers. So while Midwest was able to speak about all these things, the juries didn't hear directly from the from the customer. So but so and as a part of the malpractice case, there are these allegations that Sandburg Phoenix should have done better, should have done things differently. And then and then we and then the relief being sought is we believe that if the case had been tried differently, the verdict would have been lesser or none. So they're not alleging that we would have won. They're alleging we would have maybe been subjected to a lesser verdict, maybe or one. So with that in mind, you know, they basically saying that we want we we want from Sandburg Phoenix, all of the compensatory damages and all of the punitive damages we pay. So we filed a motion to dismiss with Judge Dugan in Madison County and basically and base that motion to dismiss or strike the request for recovery of punitive damages on the statute. One one one five. That statute specifically provides that in all cases where the plaintiff seeks damages by reason of legal or healing art malpractice. No punitive damages shall be allowed. This statute, I think, has been on the books for since the 90s, maybe earlier. I frankly don't remember, but it's been around a while. The obvious policy of the statute is to provide extra protection to lawyers and physicians who presumably are considered worthy of that extra protection. And I think more specifically with lawyers designed to give lawyers protection to keep the legal marketplace stable, to keep legal services available and affordable to people, particularly those who are getting sued for things that have the risk of punitive damages. So that's the policy behind the statute. So we filed a motion to dismiss citing the statute that Midwest cannot recover its punitive damages. And we also pointed out that this issue has been had been touched upon by the Supreme Court back in 2006 in the Tri-G case. And I'm sure that your honors know that case. In that case, the Supreme Court found that a plaintiff's lawyer who failed to properly prosecute a case could not be held liable to his client for punitive damages that that client theoretically could have recovered had the case been properly prosecuted. So, you know, under the statute on its face, you can't get punitive damages from lawyers for their own conduct. And pursuant to Tri-G, you can't get punitive damages from a plaintiff's lawyer who is alleged to have committed malpractice. But you can, but under Midwest's position, you can, that defense lawyers are not entitled to that protection. And we believe that's wrong. The trial judge, you know, I think Judge Dugan is a good judge and I think he thought about this long and hard. We all agreed it was a difficult issue because there are competing policy considerations. He ultimately denied our motion, finding that he did not think that these damages probably fell within what was barred by 1.1.1.5. There were more like compensatory damages. So he certified the issue that I've mentioned to you, and I'm not going to read the exact verbiage, but basically whether a lawyer, whether a defense lawyer can be held liable for punitive damages incurred by his client. After the loss of a case in the face of that prohibition. There are multiple reasons I think why these punitive damages should not be recoverable, and I'll just try to go through them briefly. First, I think the language of the statute is plain. The statute says no punitive damages shall be allowed. There is no dispute, the $625,000 are punitive damages. They just are. And so I think on its face, they should be barred. Now the argument has been that somehow they have been transformed into something other than punitive damages, that Midwest is not saying that Sandburg-Phoenix did anything willfully or terribly. They just are basically saying you are negligent and therefore you should repay us. And what I find interesting about that is one, I believe they are punitive damages, but two, in a sense, it's even more punitive to hold a defense lawyer liable for those damages than if the lawyer himself had done something awful, for example, like showing up to a trial intoxicated. That lawyer would be subject to the protections of 1115, even if the conduct was really horrific, so long as it was a part of the defense of a case. But in this situation, you have folks who presumably worked very hard in a difficult case to get a good result. It didn't work. And here they are being essentially punished by taking on a client who was being exposed to punitive damages. And what makes it even more punitive, I think, in a sense, is that the amount of punitive damages has no relationship to the relative wealth of any singular attorney. Now, in this case, I think the punitives are 625. That is not that unusual. And we've all seen cases or read about cases, the tobacco case years ago, $3 billion in punitive damages. I saw a case the other day. A million in compensatory, 450 million in punitive against a pharmaceutical manufacturer. And the bottom line is, that has no relationship to the attorney. And there are plenty of attorneys who singularly could not afford to deal with those kinds of cases. What is the purpose, Counselor, of punitive damages? Yeah, you're right, Judge. I'm sorry. What is the purpose of punitive damages? Isn't it to punish the offender? Yes, the purpose. I mean, there are two policies in play. Really, there are three policies in play that go on here. The first policy, as you refer to, is punitive damages are designed to punish the tort, the wrongdoer, and deter them and others from engaging in similar conduct. The jury found that Midwest had engaged in wrongful conduct and thought that their conduct was such that they should be punished. I presume they won't do what they did again. And I presume others will have learned a lesson from that. The idea of allowing that burden to be shifted over to the defense lawyer who agreed to take on the case is not, is certainly not, is certainly not, doesn't really serve those interests. In fact, I believe in the Beaver case, which is a case that says a wrongdoer cannot insure against their own punitive damages. The very policy that I think Your Honor is referring to, you cannot abdicate or get away from your responsibility for your own punitive damages. And that's what they're trying to do in this case. As compared to the other policy considerations as found in 1115, which is lawyers are worthy of protection, not just plaintiff's lawyers, but defense lawyers who have clients where punitive damages are at issue. So the idea that plaintiff's lawyers should be protected from clients who have punitive claims, but the defense lawyers should not, it's inconsistent and frankly puts defense lawyers in a very untenable situation where some of our clients are exposed to very serious allegations. And of course, as I'm sure Mr. Ripplinger will talk about, obviously the case law talks about the point of a legal malpractice claim is to restore people to the position they would have been in had, but for the alleged malpractice. So you've got this idea of compensation found in the case law, but you've got the policy in favor of punitive damages as against the tort fees, and you've got the policy of the statute that says lawyers are worthy of extra protection. And when I was thinking about that, you know, in every situation, somebody is going to think that something about the law is being unfair. But that is something that is found in literally every case. We have caps, we have hard caps on DRAM cases. We have statutes of repose that knock things out before people even know they have a case. We have caps, we obviously protect doctors. And so the legislature has decided we're going to give people certain protections, and that in giving those protections, we recognize somebody, others may not be happy with that. But that's the legislative public policy of the state of Illinois to protect lawyers under the statute. What Midwest is suggesting by trying to get these laws punitive damages is that we believe our duty or our right to be compensated should take precedence over the legislative policy that lawyers should be protected. And in this particular case, I think that's the way they've pled it. It's very interesting. Because they said that the verdict would have been different, maybe lesser or none would have been paid. So this is even a situation where somebody like Midwest, the jury in a malpractice case, could actually find that Midwest did in fact do what the first jury found they did. But they may say, you know what, that 625 might have been a little much. I would have only hit them for 200. So in that situation, you have a wrongdoer who's been found guilty of willful conduct, but they still are asking to get some of that money back. And that obviously flies in the face of punitive damages. And we've gone round and round in front of Judge Dubin when he was here about whether they had to prove they actually would have won or whether some intermediate ground is permissible. And Midwest is still holding onto the idea that we can get a partial verdict, we can get a whole verdict, we're going to leave it all open and let the second jury figure it out. And that's another reason why this policy in favor of punitive damages, it supports punitive damages, has to override the idea of compensation, particularly in light of the statutory prohibition on punitive damages against lawyers. So the reality is, we think Judge Dubin should have, and don't get me wrong, I'm a big fan of Judge Dubin. We had lots of discussions between the three of us about how this was a difficult case with difficult competing policy considerations. But the reality is, I think defense lawyers should be entitled to the same protections as plaintiff's lawyers. And so we think the certified issue should be answered in the affirmative. Well, I see your time is up. One question I'll ask you to think about when your time comes up in rebuttal, and that is the detailed order that he entered. I want you to explain what's wrong with it. Okay. Thank you, counsel. Mr. Ripley, or I'm sorry, Mr. Meadows, obviously you have time for that rebuttal that Justice Moore just referred to. Mr. Rippling, are you ready to proceed? I am, Your Honor. You go right ahead then. May it please the court. Mr. Meadows, I'm here today representing the plaintiff. And briefly, what we pled and what we were seeking in this case is a malpractice verdict, saying that the entire verdict of the plaintiff in this case was caused by the negligence of the defendant lawyers. Now, if in fact we prove that, and this court says we can't recover those damages, which were punitive damages against my clients, then we would be left with a rather strange situation in which the clients would be compensated for the underlying verdict actual damages, $65,000, but they would not be compensated for the $625,000 in punitive damages, which only resulted because of, first, the jury's verdict in favor of the plaintiff for the actual damages. So, in fact, there would be no basis, other than that caused by the defendant's lawyer, for those punitive damages to exist. Yet they would still exist, and the client would still be out $625,000. Even though the jury decided that the only reason the underlying verdict was reached was because of the negligence of the lawyer. Now, that doesn't exactly leave the plaintiff fairly compensated. The jury decides that the underlying verdict, which was the cause for the punitive damages, was the fault of the defendant lawyer. Why should they still be settled with $625,000 of punitive damages, which the jury decided were not justified by the verdict in the underlying case, the actual damages? That's the real problem we have if we come to this conclusion. But, this really is not a request for punitive damages against the lawyer. The punitive damages are meant to punish. Punitive damages are meant to, as Mr. Meadows said, to discourage similar conduct by other defendants. That's not what this is about. This is about compensating a client because of your negligence, period. Now, there's no need to find that there was wrongful conduct by the lawyer. There's no need to find that there's any intentional conduct by the lawyer or any wrongful conduct by the lawyer. Only negligent conduct. And it's not meant to punish the lawyer. It's not meant to discourage other lawyers from taking on these cases. It's merely to compensate the client. And when you read the statute, that's not what it says. What it says is you can't award punitive damages against a lawyer. And that's not what these are. They're not meant to punish anyone. Simply to compensate the client. We also talked about whether or not you have to win 100%. And I don't think you do. A number of cases cited by the defendant in this case, basically when they talk about damages in these cases, that's in the preliminary holding before the analysis of the case. It's dicta. None of those cases were decided based upon that theory. They were decided on proximate cause. They were decided on many other things. But none of them actually held that you have to get all or nothing. It's simply not the law. We cited cases in our brief where the courts have held that in fact that's what happens. When you go into a legal malpractice case, a jury is entitled to look at it anew and to decide not whether or not the first jury who came up with the verdict was correct or incorrect, but what a reasonable jury would award under the facts of the case. That's a very different thing. And when they get to that point and decide what a reasonable jury should have awarded given the facts of the case and with proper and good representation, they take the two numbers, they subtract, and that's the damages. In other words, an excessive verdict. There's no case that says you cannot receive that kind of verdict. That's not what's been cited by defense. In the Praxair v. Henshaw case, which we cited as a circuit case applying Illinois law, the court held that you must show that a victory of some sort, even if partial, was more likely than not. And that's about as specific as you can get. In these cases that they talked about, again, no case has held that you cannot receive a judgment against the lawyer for less than the total amount awarded against the client. We're also talking here about the fact that this is going to be a horrible thing. It's going to be unrestrained. Punitive verdicts accommodating were common. Referred to a lot of scare words about what's going to happen if this goes on. They have no proof of that. They've cited no authority for that. I guess you could probably find a Chamber of Commerce billboard that says that. But that's about it. There's no basis for that. And really, when you talk about who is at most risk, defense lawyers are not any more risk than plaintiff's lawyers in this situation. If a plaintiff's lawyer is found to be guilty of malpractice, the jury decides what a jury, if properly instructed and the case is properly put on, should get. And that is unlimited. The same as it would be at least in the situation where we try to recover in a malpractice case the amount of punitive damages awarded against the client. That's a solid number. They cannot exceed that. So there is a limit. That's a known quantity. And it can be insured against. In the case we cited, that holds that we talk about insurance, that an employer, for example, can insure against punitive damages being awarded simply as the fact that he is the employer and vicarious liability. He has to pay that because one of his employees did. The employer can insure that. And the same, I think, is true here. There have been no citing of any reservation of rights that have been claimed by the defendant's insurance company in this case. This is not punitive damages. And that public policy about not insuring against punitive damages does not apply under these circumstances because, again, they're not being awarded against the defendant lawyer. They were not requesting to be awarded against the defendant lawyer because of his outrageous, intentional, reckless misconduct. All we're saying is they were negligent and the client got hit with these punitive damages and they should pay it. Otherwise, again, it leads to a really untenable situation and a logical situation where the jury in a legal malpractice case decides that the underlying verdict was only because of the defendant lawyer's negligence. They still end up paying those punitive damages and no way to recover them. And, counsel, would you explain briefly what that negligence was that you allege caused the higher verdict? Well, they weren't allowed. They were not allowed to bring in a lot of witnesses. I believe if the, for example, if the customer who the driver complained to about conduct of his employer, which is my client, was able to come in and testify, that would have made a big difference. If they would have been allowed to, well, they didn't save the, the transcript of the voicemail that the customer left. That resulted in a missing witness instruction and also missing evidence instruction that the jury was allowed to presume that since the evidence was destroyed and the destruction not explained, that it would be negative against my clients. It was that they were allowed to give the missing witness instruction. Again, to presume that the customer who was not allowed to testify because of the lawyer's negligence would have been a negative for my clients, would have been in favor of the plaintiff. These are very serious problems and jury instructions were given to that effect. Essentially, it made my clients look like they were hiding the evidence, that they destroyed evidence and that they didn't bring in witnesses that they could have brought in. Alleged failure to disclose witnesses under 213F? Correct. In fact, we have evidence in a transcript of a deposition, I believe it is, where the defense lawyers were questioned about whether or not they were going to disclose these 213 witnesses. They said, yeah, we got to do that. They didn't do that. It's a pretty solid case in a lot of ways. This goes to the underlying case. If the customer was allowed to come in, was allowed to testify, that he made the phone call, left a message for them, and they were allowed to put that into evidence, it would have been an entirely different trial, I believe. They couldn't even hardly argue that because they didn't disclose the witness. They destroyed the voicemail with no explanation allowed, why it was destroyed. I believe there was a policy of destroying voicemails after a couple of days. Of course, it was at a time when they didn't know that that voicemail was going to be necessary because they thought they had a customer who could come in and testify, and the customer couldn't come in. It was terribly done. That wasn't the only witness. You're not seeking punitive damages in this case, but only compensatory. Is that correct? That's correct. We consider that the punitive damages awarded against the client are actual damage. That's money they had to pay out. We're not seeking them because the lawyer was a bad guy or a horrible guy or did anything intentionally wrong. We're seeking them because he was negligent and his negligence resulted in the underlying verdict, which led to the punitive damages. That's about it. It's a pretty narrow case. Do you have anything else to say, Mr. Ripplinger? No, I do not. All right. Thank you. Justice Moore, do you have any more questions? No. Mr. Meadows, go right ahead with your rebuttal. Thank you. I will first address, Judge Moore, your comments about Judge Dugan's order. It was a well-thought-out order in terms of how much work, and clearly he put some effort into it. We just disagree with the ultimate conclusion. There was at least a couple of things that I thought were incorrect about it. First, he commented on the suggestion that is found in the Tri-G case about the speculative nature of asking a jury in a legal malpractice case to decide with legal certainty what punitive damages should or would have been awarded in the underlying case because clearly it's a complete moral judgment. It is a completely subjective judgment, untethered to any real hard numbers. And he basically said, well, I recognize that. I don't know that that, to me, is enough to warrant going with you on that. But I think the bigger issue or bigger issues is, one, he didn't really address the policy behind the 1-1-1-5 statute because that candidly hasn't been discussed in the case law because this issue is a relatively new issue. But the idea that... And at one point, when I commented how defense lawyers are now subject to a different rule than plaintiff's lawyers, I have a very vivid memory of Judge Dugan not really wanting to deal with that distinction. And I believe he should have dealt with that distinction by ruling that we were correct, that all lawyers are entitled to be protected by the statute. But ultimately, he decided, as Mr. Ripplinger is proposing, that these are more akin to compensatory damages in a legal malpractice case. And therefore, we're not going to even apply 1-1-1-5, therefore effectively leaving defense lawyers to the mercy of clients who may be hit with large punitive damages and who have very little to lose by taking a second shot at a trial against that defense lawyer and saying, you know what? If you had done things better, we think this punitive might have been lesser. So we'd like to take a second shot at you. Maybe we can get some of that back even if we are guilty. None of that was really addressed in the order. And again, I'm a big fan of Judge Dugan. I think he's a good, smart guy. And I wish, obviously, I'm pleased for him to where he's at now. But I just think in this particular position, it was a tough call for him, and I think he made the wrong call. And I understand Mr. Ripplinger's position that this is a strange situation, which is why in terms of his client could be in a situation where he is successful in proving that, if he is successful in proving that his clients would have won, they wouldn't have been hit for one penny, there's a possibility they could be out the amount of punitive damages, even though they are ultimately found here in this case to be found innocent. And that is certainly a consideration. But as I've indicated, both the policy in terms of favoring, in terms of protecting lawyers, and the policy, I mean, you have to weigh those two together. And Illinois law, all over the place, they impose rules that, limitations on remedies that put people in a position they would prefer not to be in. I understand that's a difficult situation, but are you, so which one, which one carries the weight, the desire to try to make them fully whole, or the legislature's stated public policy that lawyers are worthy of great protection, just like physicians. And that's the problem. And that really hasn't been balanced out. People look at the statutory language, Judge Dugan just looked at the statutory language and then decided, I don't think I'm going to call these punitives, I think I'm going to call them something else. They're more akin to compensatories, so we're going to say this doesn't prevent us from doing this. And so that's why I think, with all respect to Judge Dugan, we just disagree. And when we were even arguing this, we, numerous times, there was always an understanding this issue would inevitably probably have to go up on appeal, just like the Tri-G case was taken by the Supreme Court in favor of plaintiff's lawyers. It's an important issue. And the idea, by the way, that Mr. Ripplinger said that plaintiff's lawyers are no more protected, it's simply untrue. They clearly are protected. If they have a small, if they have a case with limited actual damages or multiple rape punitive damages, they blow the statute, they are kept. But in this situation, if the defense lawyer does something to blow a case, suddenly we have unfettered open liability that could be in the millions, hundreds of millions, or like in tobacco with billions. So we think the judge erred in this, and we just ask that the court answer the question in the affirmative and we can proceed accordingly. Well, thank you, counsel. We will get with Justice Barberis as soon as we can after he's had the opportunity to watch and listen to the oral arguments. And we will take this matter under advisement and issue an order in due course. Thank you, gentlemen. Thank you, Judge. Thanks, George.